IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EMMANUEL PAGE,

                Plaintiff,

  v.

INMATE CALL SOLUTIONS, JOSEPH M.
STAFFORD, CFO JOSH SAINO, PARENT COMPANY
CENTRIC GROUP, LLC, KEVIN CARR, DANIEL
WINKLESKI, BRIAN CAHAK, MICHAEL SUBJEK,
COREY RAHLF, ROBERT W. DOYLE, T. CRAPSER,
T. FORSYTHE, XAVIER GLENN, and ANNA
BARRETT,

                Defendants.

OPINION and ORDER

21-cv-761-wmc[1]

---

      Pro se plaintiff Emmanuel Page is a state prisoner who was incarcerated at the New Lisbon Correctional Institution (NLCI) at the time relevant to this case. Page alleges that defendants unlawfully monitored and recorded his telephonic conversations with his attorney. Page paid the $402 filing fee.

      Because Page was incarcerated when he filed this case, I must screen his complaint under 28 U.S.C. § 1915A. I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept the complaint's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will allow the complaint to proceed on Page's

---

[1] I am exercising jurisdiction over this case for screening purposes only.

claims under the First Amendment, Fourth Amendment, and Federal Wiretap Act. But I will dismiss Page's Wisconsin-law and injunctive relief claims.

## ALLEGATIONS OF FACT

In 2017, attorney Robert Meyeroff became Page's attorney of record in a federal civil rights case, a state criminal case, and a postconviction case in the state court of appeals. In January 2021, Meyeroff became Page's attorney of record in another federal civil rights case. In 2017, in compliance with Division of Adult Institutions (DAI) Policy 309.39.01, Page submitted a form identifying Meyeroff as counsel of record.

Defendant Inmate Call Solutions provides contracted telephone and recording services to the Wisconsin Department of Corrections (DOC) and NLCI. Meyeroff had a prepaid account with Inmate Call Solutions and requested that his telephone be placed on a do-not-record-or-monitor list. Inmate Call Solutions and NLCI officials were informed that Meyeroff's telephone number was not subject to monitoring or recording. Under Inmate Call Solutions' contract with the DOC, properly placed attorney calls, such as those to Meyeroff's telephone, were excluded from automated recording and monitoring services. Right before Page would call Meyeroff, a message would play stating that such properly placed attorney calls were not monitored or recorded. A similar message would play after Meyeroff would accept Page's calls.

After Page was placed in temporary lockup, defendant Lieutenant Forsythe told Page that he had listened to Page's calls with Meyeroff and directed NLCI officials to listen to their calls and write a conduct report.

Soon after that, Page received a conduct report for "enterprise and fraud." The conduct report showed that defendant Sergeant Glenn, defendant Captain Subjek, and defendant Captain Rahlf were listening to Page's calls with Meyeroff, or working with other NLCI officials to listen to their calls. The conduct report was disclosed to the parole board, who "denied Page favorable Parole considerations . . . until the conduct report was resolved." The conduct report was later dismissed and Page was released from the temporary lockup.

About three weeks later, Page was placed in the temporary lock up. Defendant Lieutenant Doyle told Page that he was receiving a second conduct report for enterprise and fraud. Doyle told Page that he and NLCI officials had been listening to Page's calls with Meyeroff. In the second conduct report, defendant Officer Barrett stated that she listened to Page's calls with Meyeroff. She did so on the orders of defendant Captain Crapser, defendant Security Director Cahak, Doyle, and Forsythe. At some point, Cahak listened to Page's calls with Meyeroff.

After his second conduct report, Doyle found Page guilty and imposed 60 days of disciplinary segregation. After that, NLCI officials shared Page's communications with Meyeroff to the parole board, resulting in the denial of "favorable parole considerations."

Later, Cahak told Page that he could not communicate with Meyeroff by phone, mail, or email due to an active investigation.

Page filed an inmate complaint, whose dismissal he appealed. Page also wrote defendant DOC Secretary Kevin Carr. Defendant Warden Winkleski contended that Page did not have an attorney-client relationship with Meyeroff because they were discussing business matters.

Page never consented to anyone listening to his communications with Meyeroff.

Page asserts violations of the First Amendment, Fourth Amendment, Federal Wiretap Act, Wisconsin Constitution, the Wisconsin Electronic Surveillance Control Law, and other Wisconsin statutes. Page seeks damages and injunctive relief.

ANALYSIS

**A. Fourth Amendment**

For screening purposes, I will assume that that "prisoners retain Fourth Amendment rights in keeping conversations with their attorney confidential." *Lieberman v. Portage Cty.*, No. 18-CV-450-JDP, 2020 WL 869232, at *5 (W.D. Wis. Feb. 21, 2020). Whether a prison's policy of monitoring or recording inmate-attorney conversations is "reasonably related to legitimate penological interests" may inform whether such action violates the Fourth Amendment. *See id.* Another issue may be "whether the inmate had a reasonable expectation of privacy." *See id.* at *7.

Here, Page has sufficiently alleged that certain NLCI officials violated the Fourth Amendment by knowingly monitoring and listening to his calls with Meyeroff. Page alleges that: (1) Meyeroff was representing him in several cases and that his telephonic communications with Meyeroff were about those cases; (2) Page and Meyeroff received automated messages stating that their calls were not being monitored or recorded at the outset of the calls; (3) Page complied with DAI 309.39.01's requirement to notify prison officials that Meyeroff was his counsel of record; and (4) these officials knew that Page's calls with Meyeroff were not subject to monitoring or recording under DOC policy and the DOC's contract with Inmate Call Solutions. As relevant here, DOC policy prohibits "[a] corrections officer or

4

supervisor [from] knowingly monitor[ing] or record[ing] a properly placed telephone call to an attorney." Wis. Admin. Code DOC § 309.39; *see also* DAI Policy 309.39.01, IV(C). Page has sufficiently alleged that certain NLCI officials' monitoring and recording of his calls with Meyeroff lacked a relation to legitimate penological interests. For similar reasons, Page has sufficiently alleged that he had a reasonable expectation of privacy in his calls with Meyeroff. I will allow Page to proceed on his Fourth Amendment claim against Forsythe, Glenn, Subjek, Rahlf, Doyle, Barrett, Crasper, Cahak, and Winkleski.

I will not allow Page to proceed on his Fourth Amendment claim against Carr. Page simply alleges that he unsuccessfully complained to Carr about this conduct. Page does not discuss the content of Carr's response, if any, or provide any facts suggesting that Carr participated in, or was otherwise responsible for, the monitoring and recording of Page's calls with Meyeroff. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

I will not allow Page to proceed on his Fourth Amendment claim against Inmate Call Solutions and the other corporate defendants (Parent Company Centric Group, LLC, Joseph Stafford, and CFO Josh Saino). Page's allegations do not suggest that any of these defendants knowingly recorded Page's calls with Meyeroff. Page's allegations center on the efforts of corrections officers to monitor and record his calls with Meyeroff. Page does not allege any facts suggesting that any of the corporate defendants participated in the correctional officers's actions. Page's allegation that Inmate Call Solutions "is liable for providing access [to] Page's attorney client calls to be recorded or monitored by NLCI's prison officials" is conclusory. Dkt. 1 at 8; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Indeed, Page alleges that Inmate Call Solutions' "liability is based on its failures to take measures that would have prevented" the monitoring and recording of his calls with Meyeroff. Dkt. 1 at 8. At best, this allegation

suggests negligence, which does not violate the Fourth Amendment. *See Lieberman*, 2020 WL 869232, at *6 ("[T]he Fourth Amendment applies only when there is an *intent* to search or seize." (emphasis in original)).

**B. First Amendment**

Generally, "the First Amendment protects the right of an individual . . . to consult with an attorney on any legal matter." *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000). "The ability to maintain confidentiality in attorney-client communications is an important component of the right to obtain legal advice." *Id.* "[I]nterference with this confidentiality impedes the client's First Amendment right to obtain legal advice." *Id.*

A prison's restriction of this right may be permissible if it "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Under *Turner*, I must consider "whether the regulation has a valid, rational connection to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are ready alternatives to the regulation." *Sebolt v. Samuels*, 749 F. App'x 458, 460 (7th Cir. 2018). The first *Turner* factor is the most important. *Id.*

Here, as discussed, Page has sufficiently alleged that certain NLCI officials' monitoring and recording of his calls with Meyeroff lacked a relation to legitimate penological interests. Page also alleges that Cahak disallowed him from communicating with Meyeroff, which also suggests that Page was deprived of his right to consult with Meyeroff. At this early stage, I will allow Page to proceed on his First Amendment claim against Forsythe, Glenn, Subjek, Rahlf, Doyle, Barrett, Crasper, Cahak, and Winkleski.

I will not allow Page to proceed on his First Amendment claim against Carr and the corporate defendants for the same reasons that I will not allow Page to proceed on his Fourth Amendment claim against them. Page has not sufficiently alleged that these defendants participated in, or were otherwise responsible for, the alleged deprivation of his purported right to communicate confidentially with Meyeroff.

Page also alleges that defendants violated his right of access to the courts. To prove a violation of this right, Page must show that defendants hindered his efforts to pursue a nonfrivolous legal claim and that he suffered some actual concrete injury, "such as the inability to meet a filing deadline or to present a claim." *See Lewis v. Casey*, 518 U.S. 343, 348 (1996); *see also May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). Because Page has not so alleged, I will not allow his right-of-access claim to proceed.

**C. Federal Wiretap Act**

The Federal Wiretap Act makes it unlawful to "intentionally intercept or endeavor to intercept any wire, oral, or electronic communication." *Epstein v. Epstein*, 843 F.3d 1147, 1149 (7th Cir. 2016) (alterations adopted). "The Act also prohibits the intentional disclosure or use of the contents of an unlawfully intercepted electronic communication." *Id.* (alterations adopted). "Intercept" is defined as the intentional aural or other acquisition of the contents of any wire, electronic, or oral communication." *See id.* (alterations adopted); *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751–52 (7th Cir. 2010). Any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of the Act may recover damages in a civil action from the person who violates the Act. *See* 18 U.S.C. § 2520(a), (b)(2). The Act applies to state employees. *See* 18 U.S.C. § 2510(6).

Here, Page alleges that, against his will and contrary to DOC policy, certain defendants monitored and recorded his calls with Meyeroff and shared these recordings with the parole board. These allegations state a violation of the Act. *See Doe v. Smith*, 429 F.3d 706, 708–09 (7th Cir. 2005). I will allow Page to proceed on his Federal Wiretap Act claim against Forsythe, Glenn, Subjek, Rahlf, Doyle, Barrett, Crasper, Cahak, and Winkleski.

I will not Page to proceed on this claim against Carr and the corporate defendants. Page's allegations do not suggest that these defendants participated in, or were otherwise responsible for, the alleged violation of the Act.

### D. Injunctive relief

In addition to damages, Page seeks injunctive relief. But Page is no longer incarcerated at NLCI. I will not allow Page to proceed on his claims for injunctive relief. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

### E. Wisconsin-law claims

Page alleges violations of the Wisconsin Constitution, Wisconsin Electronic Surveillance Control Law and other Wisconsin statutes. I will not allow Page to proceed on his Wisconsin-law claims against the DOC defendants because he has not alleged that he complied with Wisconsin's notice of claim requirements under Wis. Stat. § 893.82. Wisconsin law requires that a claimant strictly comply with the statute to proceed with a state-law claim against a state employee. *Kellner v. Christian*, 197 Wis. 2d 183, 194–95 (1995). "A complaint that fails to show compliance with § 893.82 fails to state a claim upon which relief can be granted." *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997). If Page

8

complied with the notice of claim statute before he filed this lawsuit, he may file a supplement to his complaint showing that he has done so.

I will not allow Page to proceed on his Wisconsin-law claims against the corporate defendants. Page's allegations do not suggest that these defendants participated in, or were otherwise responsible for, the monitoring, recording, and sharing of his calls with Meyeroff, or the prohibition on communicating with him.

ORDER

IT IS ORDERED that:

1. Plaintiff is GRANTED leave to proceed on his First Amendment, Fourth Amendment, and Federal Wiretap Act claims for damages against defendants Forsythe, Glenn, Subjek, Rahlf, Doyle, Barrett, Crasper, Cahak, and Winkleski.

2. Plaintiff's Wisconsin-law and injunctive relief claims are DISMISSED.

3. Kevin Carr, Inmate Call Solutions, Joseph M. Stafford, CFO Josh Saino, and Parent Company Centric Group, LLC, are REMOVED as defendants.

4. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing in this order to answer or otherwise plead to the plaintiff's complaint if it accepts service for the defendants.

5. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyers directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorneys.

6. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

7.  If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered December 13, 2022.

                                        BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge